UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
ROBERT DEREK LURCH, JR.,

                    Plaintiff,

        -against-

MTA, NYCTA, JOHN DOE OFFICERS,
JAMAICA HOSPITAL MEDICAL
CENTER, JOHN DOES 1–3,

                    Defendants.
-----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
24-CV-1113 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Robert Derek Lurch, Jr., initiated this action *pro se* on February 9, 2024,

against Defendants Metropolitan Transit Authority (the "MTA"), the New York City

Transit Authority (the "NYCTA"), and John Doe New York Police Department

("NYPD") Officers "that transported me to Jamaica Hospital (and informed hospital

staff I jumped)." *See* Compl., ECF 1, at ECF p. 1 (capitalization modified). On June 5,

2024, Plaintiff filed a motion to amend the complaint, adding as Defendants Jamaica

Hospital Medical Center ("JHMC") and multiple John Doe JHMC employees[1] (together,

the "JHMC Defendants"), and terminating the MTA as a Defendant. *See* Mot. to Am.

Compl., ECF 21; Am. Compl., ECF 21-1. Plaintiff alleges that Defendant JHMC

unlawfully seized him in violation of his Fourth Amendment rights and contrary to

---

[1] Specifically, Plaintiff identifies as putative Defendants (1) the John Doe "JHMC
Employee that documented in the records of the incident that the plaintiff was found down on
the train tracks"; (2) the John Doe "JHMC Employee that documented in the plaintiff's patient
chart that the plaintiff told providers in the trauma bay that he intentionally jumped onto the
train tracks"; and (3) the John Doe "JHMC Employee that documented in the plaintiff's patient
chart that the plaintiff told police he intentionally jumped." Am. Compl., ECF 21-1, at ECF pp. 4,
17–18.

New York state law by hospitalizing him for several hours following an incident where he fell onto the subway tracks at the Jamaica-Van Wyck E train station. Am. Compl., ECF 21-1, at ECF pp. 15–18, 21–24. Plaintiff further alleges that Defendant NYCTA was negligent in, *inter alia*, allowing "an oily substance" and "buil[t] up debris" to accumulate on a subway platform, which allegedly caused Plaintiff's fall. *Id.* at ECF pp. 7, 20.

Presently before the Court are Defendants JHMC and NYCTA's motions to dismiss the amended complaint. For the reasons that follow, the Court respectfully recommends that the motions to dismiss be granted in their entirety.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

According to Plaintiff's amended complaint, on June 3, 2023, between the hours of 2:00 and 4:00 a.m., Plaintiff was waiting for the subway at the Jamaica-Van Wyck E train station when he slipped and fell onto the tracks, fracturing his ribs. *See* Am. Compl., ECF 21, at ECF p. 6. In his recitation of the facts, Plaintiff describes having seen "an oily substance on the smooth bumps that make up the yellow tiling of the platform." *Id.* at ECF p. 7; *see also id.* at ECF p. 12 (alleging that Plaintiff fell on the tracks "due to oil and debris that accumulated on the subway platform tiling"). A "good Samaritan" called out to Plaintiff to warn him that a train was approaching the station and to get off the tracks; Plaintiff walked along the tracks to the stairs located at the front of the tunnel, climbed the stairs back up to the platform, and "collapsed, losing consciousness." *Id.* at ECF p. 6.

In the amended complaint, Plaintiff does not allege any particular facts about who found him or transported him to the hospital. *Cf. generally id.* He awoke on a gurney in the emergency department at JHMC, where a nurse informed him that he

could not leave because police officers had told the hospital that he had jumped onto the tracks.[2] *Id.* at ECF pp. 6–7. Plaintiff told the nurse he had slipped, not jumped, and had only lost consciousness after returning safely to the platform. *Id.* at ECF p. 7. The nurse told Plaintiff that to be discharged, he needed someone to pick him up and confirm he was not suicidal. *Id.* at ECF pp. 7–8. Plaintiff "tried to get up and leave[,] but hospital security was alerted," and he was unable to leave of his own accord. *Id.* at ECF p. 8. Security personnel lent Plaintiff a phone to call his girlfriend to pick him up. *Id.* Approximately four hours later, Plaintiff was transferred to JHMC's adult Comprehensive Psychiatric Emergency Program ("CPEP"). *Id.* at ECF pp. 8–9. Plaintiff's girlfriend later arrived and was interviewed by the doctor; around 45 minutes later, on the same day that he arrived at the hospital, Plaintiff was discharged. *Id.* at ECF p. 9.

## II. Procedural History

As noted above, Plaintiff initiated this action *pro se* by filing a complaint on February 9, 2024, alleging a claim of false arrest under 42 U.S.C. § 1983 ("Section 1983") against the John Doe officers, and a common law negligence claim against the MTA and the NYCTA. *See generally* Compl., ECF 1. On April 25, 2024, Defendants MTA and NYCTA moved to dismiss the complaint, and Plaintiff filed his opposition on May 22, 2024. Letter, ECF 18; Pl. Opp'n, ECF 20. On June 5, 2024, Plaintiff moved to amend the complaint, removing his claims against the MTA, renewing his negligence claim against

---

[2] Plaintiff disputes the veracity of certain medical records, attached as exhibits to the amended complaint and relied upon therein, which reflect a narrative that he told police officers that he jumped onto the tracks in an apparent attempted suicide. *See, e.g.*, Ex. A, ECF 21-1, at ECF p. 28 (reporting that Plaintiff was found on train tracks and had told police he had jumped but told providers in trauma bay that he fell). Plaintiff also argues that the discrepancies in the medical records themselves, some of which indicate Plaintiff was found on the platform while others suggest he was found on the tracks, support his claim that JHMC violated his rights by unlawfully seizing him. *See* Pl. Opp'n, ECF 38, at ECF pp. 8–10; *see also* Am. Compl., ECF 21-1, at ECF pp. 16–17.

the NYCTA, and bringing new claims for unlawful seizure and *Monell* liability against JHMC and its John Doe employees. Am. Compl., ECF 21, at ECF pp. 15–18 (alleging unlawful seizure in violation of the Fourth Amendment), 19–20 (negligence claim), 21–23 (*Monell* claim).

On December 18, 2024, then-Magistrate Judge Sanket J. Bulsara issued a Report and Recommendation ("R. & R."), recommending that the motion to amend be granted and Defendants MTA and NYCTA's motions to dismiss be denied without prejudice, which the Honorable Diane Gujarati adopted on January 13, 2025, rendering the proposed amended complaint the operative complaint.[3] *See* R. & R., ECF 29; Jan. 13, 2025 ECF Order Adopting R. & R.

On March 12 and 14, 2025, JHMC and the NYCTA mailed Plaintiff copies of their respective notices of motion and memoranda of law in support, along with copies of cases and authorities pursuant to E.D.N.Y. Local Rule 7.2. *See* JHMC Letter, ECF 36; NYCTA Letter, ECF 37. On May 5, 2025, Plaintiff filed his opposition to the JHMC's motion. Pl. Opp'n, ECF 38. On May 15 and 16, 2025, JHMC and the NYCTA filed their motions to dismiss and memoranda of law on ECF, as well Plaintiff's memorandum of law in opposition to JHMC's motion and JHMC's reply. *See* JHMC Mot. to Dismiss, ECF 39; JHMC Mem. in Supp. of Mot. to Dismiss ("JHMC Mem."), ECF 39-1; Pl. Opp'n, ECF 39-3; JHMC Reply, ECF 40; NYCTA Mot. to Dismiss, ECF 41; NYCTA Mem. in Supp. of Mot. to Dismiss ("NYCTA Mem."), ECF 42. On August 12, 2025, the case was

---

[3] In adopting the R. & R., Judge Gujarati emphasized that Plaintiff "must identify the John Doe NYPD officers sued for false arrest under the Amended Complaint," which then-Magistrate Judge Bulsara had also directed in his R. & R. Jan. 13, 2025 ECF Order Adopting R. & R.; *see* R. & R., ECF 29, at 4 n.1. On December 18, 2025, Plaintiff filed a motion to compel, requesting that the Court order the City of New York "to obtain the names of the John Doe officers by contacting the EMTs that were involved in this incident." Mot. to Compel, ECF 47.

reassigned to the undersigned Magistrate Judge for all further proceedings, and on August 14, 2025, Judge Gujarati referred the motions to dismiss for a report and recommendation. *See* Aug. 12, 2025 ECF Order Reassigning Case; Aug. 14, 2025 ECF Order Referring Motions.

For the reasons discussed below, the Court respectfully recommends that the motions to dismiss be granted in their entirety.

## DISCUSSION

Based on the allegations described above, Plaintiff asserts five causes of action, which the Court construes liberally given his *pro se* status. These are: (1) false arrest under 42 U.S.C. § 1983 against the John Doe NYPD officers, who have not been identified or served in this case; (2) unlawful seizure under 42 U.S.C. § 1983 against JHMC and its John Doe employees; (3) *Monell* liability against JHMC; (4) false arrest under New York state law against JHMC and its John Doe employees; and (5) state-law negligence against the NYCTA.[4] *See generally* Am. Compl., ECF 21-1; Pl. Opp'n, ECF 39-3.

---

[4] The Court observes that Plaintiff's amended complaint is organized in such a way that his Section 1983 claims, specifically, are alleged against Defendants John Doe NYPD officers, not Defendants John Doe JHMC employees. *Compare* Am. Compl., ECF 21-1, at ECF pp. 11–14 (section captioned "Fourth Amendment Violation: False Arrest," discussing Section 1983 case law; indicating "John Doe officers (NYPD)" as "parties liable") *with id.* at ECF pp. 15–18 (section captioned "Fourth Amendment Violation: Unlawful Seizure," discussing N.Y. Mental Hygiene L. § 9.37 and related case law; indicating John Doe JHMC employees as "parties liable"). Construing the *pro se* Plaintiff's pleadings liberally, as the Court must, and knowing that Section 1983 "provides only a procedure for redress for the deprivation of rights established elsewhere" in lieu of creating any substantive rights, *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), the Court reads Plaintiff's amended complaint to allege both federal Section 1983 claims and state false arrest claims against the JHMC Defendants. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (observing that the court must interpret a *pro se* litigant's submissions "to raise the strongest arguments that they suggest" (quotation marks omitted)).

Defendants JHMC and NYCTA advance multiple independent grounds for dismissing Plaintiff's amended complaint and the claims contained therein. JHMC argues that (1) Plaintiff fails to state a Section 1983 claim under Federal Rule of Civil Procedure 12(b)(6); (2) Plaintiff's false arrest claim under New York state law should be dismissed for the same reason; and (3) if the Court dismisses the federal claim, but not the state law claim, the Court should not exercise supplemental jurisdiction over the state law claim. *See generally* JHMC Mem., ECF 39-1. The NYCTA contends that (1) Plaintiff's negligence claim against the NYCTA should be dismissed on procedural grounds due to Plaintiff's failure to allege that he followed the required notice of claim procedure under New York law; (2) the Court should not exercise supplemental jurisdiction over a state law claim that is factually unrelated to Plaintiff's federal claims; and (3) Plaintiff fails to allege all the elements of a negligence claim, as required to survive a motion to dismiss. *See generally* NYCTA Mem., ECF 42.

## I. Legal Standards

### A. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires establishing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (explaining that courts are "not required

6

to credit conclusory allegations or legal conclusions couched as factual allegations" (quotation marks omitted)); *Jackson v. Nassau County*, 552 F. Supp. 3d 350, 364 (E.D.N.Y. 2021) ("'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted))). At the motion to dismiss stage, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). When deciding a motion to dismiss, the court does not "weigh the evidence that might be presented at trial but merely . . . determine[s] whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012); *see Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

In addition, although the scope of review for Rule 12(b)(6) motions is generally limited to the complaint, courts may consider some extrinsic materials, including "material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991) (holding that the district court was entitled to consider documents incorporated in the complaint by reference and which were integral to the plaintiff's claim on a motion to dismiss).

Finally, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). *Pro se* complaints, in particular, "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*

*v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)). The Court is therefore required to interpret the submissions of a *pro se* litigant "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted). To that end, "[w]here new allegations in a *pro se* plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings.'" *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) (quoting *Boyer v. Channel 13, Inc.*, Nos. 04-CV-2137, et al. (JSR) (FM), 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005)); *see Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012); *see also Adkins v. City of New York*, No. 19-CV-3628 (GBD) (DF), 2020 WL 2950979, at *5 (S.D.N.Y. Jan. 3, 2020) (finding that "courts should act with particular care" before dismissing a *pro se* plaintiff's complaint, "[e]specially in the civil rights context"), *report and recommendation adopted*, 2020 WL 1031130 (S.D.N.Y. Mar. 3, 2020). However, courts do not have to credit new causes of action raised for the first time in a *pro se* plaintiff's opposition. *See, e.g.*, *Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (summary order) (affirming the district court's rejection of a new constitutional cause of action raised in *pro se* plaintiff's opposition). And, although a *pro se* complaint is "construed liberally . . . and interpreted to raise the strongest claims that it suggests," it must still state a plausible claim to relief. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

**B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is proper when "the district court lacks the statutory or constitutional power to adjudicate" the plaintiff's claim. *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quotation marks omitted). To have subject matter jurisdiction, federal courts must have original jurisdiction over at least one of the claims

8

in the action. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552–55, 559–61 (2005). For a court to have original jurisdiction, the claim must "arise under" the Constitution or laws of the United States, or the plaintiffs and defendants must be of diverse citizenship and the amount in controversy must exceed $75,000. 28 U.S.C. §§ 1331, 1332. A plaintiff has the burden to prove subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). While courts typically may not look to materials outside the pleadings on a motion to dismiss, when assessing whether subject matter jurisdiction exists, courts "may refer to evidence outside the pleadings." *Cangemi v. United States*, 13 F.4th 115, 129 (2d Cir. 2021) (quotation marks omitted).

When a court has original jurisdiction over a claim, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A claim forms part of the same case or controversy when it "'derive[s] from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted)). To determine whether the claims derive from this common nucleus, courts ask whether the facts underlying the state and federal claims "'substantially overlapped'" or whether they are "'essentially unrelated.'" *Sadigh v. City of New York*, No. 25-CV-0948 (RPK) (RML), 2025 WL 1092842, at *4 (E.D.N.Y. Apr. 11, 2025) (first quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (alterations and internal quotation marks omitted), then quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 221 F.3d 697, 704 (2d Cir. 2000)).

The decision to retain supplemental jurisdiction, however, is discretionary. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *see also Klein & Co. Futures v. Bd. of Trade*, 464 F.3d 255, 263 (2d Cir. 2006) (observing that a litigant does not

have a right to supplemental jurisdiction). In determining whether to exercise supplemental jurisdiction, courts often weigh (1) judicial economy, (2) convenience, (3) fairness, and (4) comity. *Carnegie-Mellon Univ. v. Cohill ("Cohill")*, 484 U.S. 343, 350 (1988); *see Motorola Credit Corp. v. Uzan ("Uzan")*, 388 F.3d 39, 56 (2d Cir. 2004); *Cappone v. Morrisse*y, No. 16-CV-7170 (RRM) (SJB), 2018 WL 4055280, at *11 (E.D.N.Y. July 27, 2018), *report and recommendation adopted*, 2018 WL 4054871 (E.D.N.Y. Aug. 24, 2018). A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[A]s a general proposition," the Second Circuit has held, "'if [all] federal claims are dismissed *before* trial . . . , the state claims should be dismissed as well.'" *Uzan*, 388 F.3d at 56 (quoting *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991) (internal quotation marks omitted)).

## II. Analysis

### A. Federal and State Claims Against the JHMC Defendants

As set forth above, Plaintiff's amended complaint, liberally construed, asserts three claims against JHMC and its John Doe employees: (1) a Section 1983 claim against JHMC and its John Doe employees for unlawful seizure; (2) a *Monell*-type claim against JHMC; and (3) a claim for false arrest and false confinement under New York state law against JHMC and its John Doe employees. *See* Am. Compl., ECF 21-1, at ECF pp. 15–18 (detailing unlawful seizure claim under the Fourth Amendment and New York state law); *id.* at 21–23 (alleging *Monell* claim). JHMC counters that Plaintiff's Section 1983 allegations fail to state a claim on which relief can be granted because JHMC and its

John Doe employees are not state actors and thus not proper Section 1983 defendants.[5] JHMC Mem., ECF 39-1, at 7; *see also* JHMC Reply, ECF 40, at 2–4. JHMC further argues that Plaintiff's New York false arrest and false imprisonment allegations fail to state a claim; and, even if they did, the Court should decline to exercise supplemental jurisdiction over these state law claims in the absence of a cause of action over which the Court has original jurisdiction. JHMC Mem., ECF 39-1, at 7–10.

1. *Section 1983 Claim*

Plaintiff alleges that JHMC's John Doe employees violated Section 1983 by depriving him of his Fourth Amendment right to be free from unlawful seizure when JHMC relied on "false evidence" — *i.e.*, statements that Plaintiff had jumped onto the train tracks in an apparent mental health crisis[6] — to "justify involuntarily hospitalizing the Plaintiff." Am. Compl., ECF 21-1, at ECF pp. 16, 18. Plaintiff also asserts that information in the hospital records "suggest[s] that hospital officials intended to

---

[5] JHMC does not explicitly address Plaintiff's *Monell*-type claim in its memorandum or reply. *See generally* JHMC Mem., ECF 39-1; JHMC Reply, ECF 40.

[6] The exhibits Plaintiff attached to his complaint include the underlying hospital treatment notes and the "false evidence" Plaintiff claims support his allegations. *See* Ex. A, ECF 21-1, at ECF p. 28 (treatment notes indicating that Plaintiff "told police he intentionally jumped and told providers in the trauma bay he fell on train tracks"); Ex. B, ECF 21-1, at ECF p. 31 (stating that Plaintiff "told police he fell and told providers in the trauma bay he intentionally jumped on to train tracks"); Ex. C, ECF 21-1, at ECF p. 34 (describing patient as "intoxicated and fell onto the train tracks" but "able to get back on the platform" and indicating history of attempted suicide); Ex. E, ECF 21-1, at ECF p. 43 (reporting that Plaintiff "informed crew that he[ had] been drinking all day and . . . fell on the track" and was found "sitting in the upright position on subway platform with CFR and NYPD officers"); Ex. F, ECF 21-1, at ECF p. 45 (explaining that Plaintiff reported that "he fell due to under influence of drugs"); Ex. G, ECF 21-1, at ECF p. 48 (quoting Plaintiff saying "I fell on to the tracks because I was black out drunk"); Ex. J, ECF 21-1, at ECF p. 58 ("Patient reports he was drunk, slipped and fell down the train track. Patient then states he eventually stood and climbed up [on] the podium.").

involuntarily commit the Plaintiff with or without justification." *Id.* at ECF p. 17 (citing Ex. H, ECF 21-1, at ECF pp. 51–52[7]).

In order to maintain a claim under Section 1983, "two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). Such deprivations of constitutional rights are "only actionable against state actors or private parties acting under the color of state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quotation marks omitted). A plaintiff alleging Section 1983 claims "bears the burden of showing state action on the part of the defendant." *Bryant v. Steele*, 462 F. Supp. 3d 249, 266 (E.D.N.Y. 2020).

"[A] private entity can qualify as a state actor in a few limited circumstances." *Manhattan Cmty. Access Corp. v. Halleck* ("*Halleck*"), 587 U.S. 802, 809 (2019). In *Halleck*, the Supreme Court identified three such circumstances: "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Id.* (citations omitted); *see also Sybalksi v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "While the Supreme Court did not

---

[7] The treatment note Plaintiff cites in support of his claim that the hospital records reflect the intention to hold him with or without justification reads, in relevant part, as follows: "Patient keeps on threatening to leave[.] Psychiatry resident says without any collateral information as well as history of suicidal ideation/attempt patient needs to be brought to CPEP." Ex. H, ECF 21-1, at ECF p. 51.

indicate that those circumstances exhaust the possibilities, their limited number evinces that holding a private actor liable for constitutional violations is a high bar." *Lurch v. City of New York*, No. 19-CV-11253 (AJN), 2021 WL 1226927, at *3 (S.D.N.Y. Mar. 31, 2021).

Plaintiff directs the Court to a purported fourth circumstance identified by the Ninth Circuit: where the "governmental nexus" test applies. Pl. Opp'n, ECF 38, at ECF pp. 3–6 (citing, *inter alia*, *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). In this circuit, however, whether there is a close nexus between the state and the challenged action is examined under the joint action test, the third circumstance identified in *Halleck. See Sybalksi*, 546 F.3d at 257 (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Plaintiff also identifies the "symbiotic relationship" test as a fifth test under this framework. Pl. Opp'n, ECF 38, at ECF pp. 5–6. Like the "governmental nexus" test, this is best analyzed as a derivative of the joint action test. *See, e.g.*, *Findley v. Carter*, No. 23-CV-0946 (LTS) (RFT), 2025 WL 1002386, at *3 (S.D.N.Y. Mar. 31, 2025) (observing that the symbiotic relationship test is "one mechanism" by which to show joint action). Courts in this circuit therefore focus on *Halleck*'s "[t]hree main tests," with the "fundamental question under each test [being] whether the private entity's challenged actions are fairly attributable to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quotation marks omitted); *see Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022).

Various cases in this Circuit have found that JHMC, specifically, is not a state actor for purposes of Section 1983, drawing on a larger body of case law finding that private hospitals are generally not proper Section 1983 defendants. *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229–31 (2d Cir. 2014) (affirming the dismissal of Section 1983 claims against JHMC and four employees for failure to state a claim; observing

that, although "the state endowed Defendants with the authority to involuntarily hospitalize" the plaintiff, "it did not compel them to do so"); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 531 (S.D.N.Y. 2015) (finding on summary judgment that JHMC, as a private hospital, does not qualify as a "person" under Section 1983); *Murphy v. New York City*, No. 23-CV-5244 (HG) (LB), 2023 WL 4827118, at *3 (E.D.N.Y. July 27, 2023) ("Jamaica Hospital is a private hospital . . . and a private hospital is not a state actor for § 1983 actions."); *see also Joseph v. Jamaica Hosp. Med. Ctr.*, No. 21-CV-2137 (PKC) (PK), 2021 WL 2400995, at *3 (E.D.N.Y. June 11, 2021); *Sadigh*, 2025 WL 1092842, at *3.

Here, as in the above cases, Plaintiff makes no allegations that JHMC or its employees were performing a traditional, exclusive public function. *See Amira v. Maimonides Hosp.*, No. 21-CV-3976 (RPK) (TAM), 2022 WL 18034533, at *7 (E.D.N.Y. Nov. 30, 2022) (collecting Second Circuit cases holding that involuntary commitment is not a traditionally exclusive public function), *report and recommendation adopted*, Dec. 29, 2022 ECF Order Adopting R. & R. Nor does Plaintiff plausibly plead that the government compelled JHMC to involuntarily hospitalize him. Even taking as true his allegations that JHMC employees "documented false information" supplied by the NYPD "to justify involuntarily hospitalizing" him, this claim does not plausibly allege that JHMC was "'controlled' by" the state or acted pursuant to the state's "'coercive power'" in doing so. Am. Compl., ECF 21-1, at ECF p. 16; *Sybalski*, 546 F.3d at 257 (quoting *Brentwood*, 531 U.S. at 296); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (discussing state action by private nursing homes).

Finally, Plaintiff does not allege particularized facts from which to infer that *any* state actor — whether through the NYPD as its representative or otherwise — acted jointly with JHMC to achieve a "common goal" (*i.e.*, hospitalizing Plaintiff in violation

14

of his rights). *Betts*, 751 F.3d at 85 (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)); *see also Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (observing that "the mere fact that a private actor received police assistance is not sufficient to transform that private actor's conduct into state action for § 1983 purposes"). The Court notes that the exhibits to Plaintiff's amended complaint suggest that there was some exchange of information between police and emergency responders, insofar as certain JHMC providers documented what Plaintiff told police. *See, e.g.*, Ex. A, ECF 21-1, at ECF p. 28. However, Plaintiff's amended complaint does not allege any facts from which to infer who called emergency services, or who transported him to JHMC, much less that any individual who was a state actor acted in concert with JHMC to achieve a common goal of violating Plaintiff's constitutional rights. Rather, Plaintiff's amended complaint states that he lost consciousness and woke up on a gurney in the JHMC. Am. Compl., ECF 21-1, at ECF p. 6. Plaintiff's opposition, which references case law applying the above factors, contains no additional facts or argument that would support a different conclusion. *See generally* Pl. Opp'n, ECF 38.

For all of these reasons, Plaintiff has not alleged specific facts from which to infer that JHMC and its employees' actions are attributable to the state. *See Fabrikant*, 691 F.3d at 207. Accordingly, they cannot be proper Section 1983 defendants as a matter of law. The Court thus finds that the Fourth Amendment claim against the JHMC Defendants does not allege facts that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court respectfully recommends dismissing Plaintiff's Section 1983 claim as to the JHMC Defendants under Rule 12(b)(6).

2. *"Monell-type" Claim*

Plaintiff asserts an additional claim for *Monell* liability against JHMC. *See* Am. Compl., ECF 21-1, at ECF pp. 21–23. In essence, and construed liberally, Plaintiff alleges that JHMC's "failure to supervise" hospital personnel who have authority to involuntarily hospitalize individuals in mental health crisis under New York's Mental Hygiene Law ("MHL") § 9.37 allows physicians to "falsif[y] the circumstances of an incident" in order to "justify an involuntary commitment" under the MHL, in violation of the Fourth Amendment. *Id.*, at ECF p. 22. Even assuming, *arguendo,* that JHMC's actions were under color of law, or violated Plaintiff's constitutional rights, Plaintiff has not alleged sufficient, non-conclusory facts to plausibly plead a policy or practice under *Monell*.

To establish a municipal liability (or *Monell*) claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks omitted); *see Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). The Second Circuit has recognized that the rationale of *Monell* has been extended in some circumstances to private entities acting under color of state law, which entities would not otherwise be considered state actors. *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (citing cases in the Fourth, Fifth, and Seventh Circuits extending *Monell* to suits against private entities where the private entity has relied on state law to deprive a person of their civil rights); *see also Rivers v. New York City Hous. Auth.*, 176 F. Supp. 3d 229, 242–43 (E.D.N.Y. 2016) (recognizing extension of *Monell* to private employers, but granting summary judgment on *Monell*-type claim where plaintiffs did not allege that the defendant union had a policy or practice of targeting individuals for retaliation based on their political

16

beliefs), *aff'd sub nom. Crenshaw v. New York City Hous. Auth.*, 697 F. App'x 726 (2d Cir. 2017).

To state a claim for relief under *Monell* on a failure to supervise theory, a plaintiff must plausibly allege that the entity acted with "deliberate indifference" to "the need for more or better supervision to protect against obvious constitutional violations." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 580–81 (E.D.N.Y. 2018). The *Alwan* court observed that an obvious need for better supervision may be demonstrated through, for example, repeated complaints of civil rights violations, while deliberate indifference may be inferred from a lack of "meaningful attempt . . . to investigate or to forestall further incidents" beyond mere "bureaucratic inaction." *Id.* (quotation marks omitted). "While plaintiff need not conclusively prove the existence of a policy" at the motion to dismiss stage, "he must allege facts tending to support, at least circumstantially, an inference that such a . . . policy or custom exists." *Innamorato v. County of Suffolk*, No. 23-CV-6573 (NCM) (ARL), 2025 WL 2605604, at *7 (E.D.N.Y. Sept. 9, 2025) (quotation marks omitted); *see Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015). "[M]ere allegations of a . . . custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman*, 2015 WL 1379652, at *13.

Here, taking Plaintiff's allegations as true, as the Court must, he fails to state a plausible *Monell* claim against JHMC. As discussed above, Plaintiff fails to sufficiently allege a constitutional violation. Even assuming, *arguendo,* that he did, however, Plaintiff fails to plead a failure-to-supervise claim under *Monell*. Plaintiff's conclusory allegations — that JHMC employees deliberately created a false narrative in order to

17

justify his involuntary hospitalization — fail to set forth any particularized facts that would give rise to a reasonable inference that there is a policy in place to encourage such false narratives, or that JHMC is deliberately indifferent to a need for more or better supervision to protect against constitutional violations occasioned by such false narratives.

Consequently, the Court respectfully recommends dismissing Plaintiff's *Monell*-type claim against Defendant JHMC.

3.  *State Law False Arrest and False Imprisonment*

As discussed above, Plaintiff alleges false arrest and unlawful seizure under the Fourth Amendment, as a Section 1983 claim, and also under New York state law. *See* Am. Compl., ECF 21-1, at ECF pp. 15–18. JHMC argues that, first, Plaintiff's allegations fail to state a claim under state law; second, that, to the extent that these allegations arise under state law, the Court should decline to exercise supplemental jurisdiction over them. JHMC Mem., ECF 39-1, at 9–10. The Court first addresses whether the exercise of supplemental jurisdiction is appropriate. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (instructing that "the existence of subject matter jurisdiction is a threshold inquiry" (quotation marks omitted)). If Plaintiff's Section 1983 claim against JHMC is dismissed, there will be no other claims concerning his alleged seizure at the hospital by which Plaintiff can establish federal question jurisdiction. Accordingly, the Court must first assess whether retaining jurisdiction over Plaintiff's state law claims premised on the same facts is appropriate. *See Uzan*, 388 F.3d at 56 (stating that when "a federal court dismisses all claims over which it had original jurisdiction, it must reassess its jurisdiction over the case").

"[F]ederal courts are courts of limited jurisdiction" and generally only authorized to hear cases arising under federal question or diversity jurisdiction. *Owen*

*Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *see* 28 U.S.C. §§ 1331, 1332. Given the lack of complete diversity among the parties, Plaintiff's case is premised on federal question jurisdiction in light of his Section 1983 claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *see also id.* § 1332(a) (defining complete diversity). As discussed, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Here, the facts underlying Plaintiff's state law unlawful seizure claim against JHMC are clearly "related to claims in the action within such original jurisdiction" — the Section 1983 claims that the Court has recommended be dismissed — insofar as they derive from a common nucleus of operative fact. 28 U.S.C. § 1367(a). Indeed, the facts underlying both the Section 1983 claim and the state law false arrest claim against JHMC are the same, in that they stem from Plaintiff's being held involuntarily at the hospital. *See Amira*, 2022 WL 18034533, at *14–15 (finding that Plaintiff's state law claims, including, *inter alia*, gross negligence, formed part of the same case or controversy as her Section 1983 claims because they arose out of actions a private ambulance and hospital took in involuntarily hospitalizing her).

The question for the Court then becomes whether the *Cohill* factors — judicial economy, convenience, fairness, and comity — counsel in favor of the exercise of supplemental jurisdiction. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors" will ordinarily "point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Royal Canin U.S.A., Inc., v. Wullschleger,* 145 S. Ct. 41, 50 (2025) (observing that, when federal-law claims are dismissed, "the court may (and indeed, ordinarily should) kick

the case to state court"). This includes instances where, as here, the jurisdiction-invoking claims that form part of the same case or controversy — that share that common nucleus of operative fact — are dismissed on a timely Rule 12(b)(6) motion.[8] *See, e.g., Turner v. N.Y. Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d 161, 170–71 (E.D.N.Y. 2015*); Camhi v. Glen Cove City Sch. Dist.*, 920 F. Supp. 2d 306, 312–13 (E.D.N.Y. 2013); *Johnson v. Levy*, 812 F. Supp. 2d 167, 184–85 (E.D.N.Y. 2011).

In this case, the *Cohill* factors weigh against exercising supplemental jurisdiction over Plaintiff's remaining state law claim against JHMC. Considering judicial economy and convenience, this is not a case where "dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (quotation marks omitted). As set forth above, Plaintiff filed his complaint in February 2024, and Defendants notified the

---

[8] The Court notes that consideration of the remaining Section 1983 claim for false arrest, alleged against the John Doe NYPD officers (who, as noted *supra*, have neither been identified nor appeared in this case), does not alter the Court's analysis. Plaintiff's sole claim against the officers is for false arrest, in violation of the Fourth Amendment, apparently premised on the theory that NYPD officers took Plaintiff into custody and communicated information to JHMC employees concerning the circumstances of Plaintiff's fall onto the subway tracks. *See* Am. Compl., ECF 21-1, at ECF pp. 11–14. Although the officers' actions, as pleaded by Plaintiff, may have set the JHMC Defendants' actions into motion, the amended complaint does not plead any non-conclusory facts from which to conclude that the officers and JHMC were acting in concert, or that there is sufficient factual overlap between the different institutional actors' roles to retain jurisdiction over the state law claims against JHMC. Rather, Plaintiff's claims against the NYPD officers are almost entirely distinct from Plaintiff's remaining claims, insofar as the false arrest claim against the NYPD officers centers on what occurred at the subway station prior to Plaintiff's transportation to JHMC (apparently by FDNY EMTs). *See id.*; *see also* Ex. E, ECF 21-1, at ECF p. 40 (FDNY Prehospital Care Report summarizing the details of Plaintiff's transport to JHMC). There is thus no common nucleus of operative fact as between the claim against the John Doe NYPD officers and the claims against the JHMC Defendants, which center on his being required to stay in the hospital against his will by hospital staff. *See Sadigh v. City of New York*, No. 25-CV-0948 (RPK) (RML), 2025 WL 1092842, at *4 (E.D.N.Y. Apr. 11, 2025) (finding that the plaintiff's claims concerning NYPD officers' actions prior to her arrival at Jamaica Hospital lacked a "'common nucleus of operative fact'" with her claims against JHMC regarding alleged mistreatment while she was at the hospital (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)).

court of their intention to file 12(b)(6) motions on April 3, 2024. *See* Apr. 3, 2024 Mot. for Extension of Time to File an Answer; Apr. 5, 2024 ECF Order (granting Defendants' motion). After Plaintiff amended his complaint, Defendants filed the current motion to dismiss in May 2025 — a little over a year after the complaint was initially filed, and before any discovery had commenced. *See* Dec. 18, 2024 R. & R., ECF 29; Jan. 13, 2025 Order Adopting R. & R.; JHMC Mot. to Dismiss, ECF 39; *cf. Finkelstein v. Mardkha*, 495 F. Supp. 2d 329, 345 (S.D.N.Y. 2007) (retaining supplemental jurisdiction where parties had already completed discovery); *Drake v. Lab'y Corp. of Am. Holdings*, 323 F. Supp. 2d 449, 454–55 (E.D.N.Y. 2004) (same, where plaintiff had spent a decade litigating related claims, rendering federal court "uniquely familiar with all the underlying facts and history"). Accordingly, judicial economy and convenience would not be preserved by retaining jurisdiction over these claims, which weighs against exercising supplemental jurisdiction.

The principle of comity, on the other hand, weighs neither for nor against the Court's exercise of its discretion. This is because federal courts look "to the law of the state in which the arrest occurred" in analyzing Section 1983 claims for false arrest and unlawful seizure. *Alberty v. Hunter*, 144 F.4th 408, 414–15 (2d Cir. 2025) (quotation marks omitted); *see Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (observing that the Fourth Amendment right to be free from unreasonable seizure is "substantially the same as a claim for false arrest under New York law"); *cf. Baptiste v. W Hotel*, No. 04-CV-5544 (DLC), 2005 WL 1020779, at *5 (S.D.N.Y. Apr. 27, 2005) ("[T]he principle of comity dictates that where a plaintiff's remaining claims solely sound in state law, a federal court should decline to exercise jurisdiction."). Fairness, likewise, does not tip the scale. The tolling provision in 28 U.S.C. § 1367(d) preserves Plaintiff's right to refile any state law claims arising from his

21

hospitalization within 30 days of dismissal, preventing the dismissal from prejudicing his rights. *See* 28 U.S.C. § 1367(d) (providing that the limitations periods for claims brought under supplemental jurisdiction are "tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

The balance of the *Cohill* factors weighs against exercising supplemental jurisdiction over Plaintiff's state law false arrest and/or unlawful seizure claims against the JHMC Defendants. Accordingly, the Court recommends that Plaintiff's state law claims against JHMC and its employees be dismissed for lack of subject matter jurisdiction.

## B. State Claim Against Defendant NYCTA

Plaintiff's sole claim against the NYCTA is negligence under state law. He alleges that "[t]he entity that built and maintains" the station at which he was injured "has an obligation to its customers to ensure their safe[ty]," and a "duty to fix" unsafe conditions "to prevent foreseeable harm" to its customers. Am. Compl., ECF 21-1, at ECF p. 19. He alleges that this duty includes keeping stations "well lit," installing "guardrails to prevent customers from falling onto the tracks," and designing platforms "without any smooth surfaces" so as to prevent customers from slipping. *Id.* He further alleges that the NYCTA "has a duty to prevent liquid and debris from building up on its platforms." *Id.*, at ECF p. 20.

The NYCTA counters that this claim must be dismissed because (1) Plaintiff did not properly serve the NYCTA with a notice of claim; (2) even if the Court does not dismiss the federal law claims against JHMC, as it has recommended *supra*, it should decline to exercise supplemental jurisdiction in light of the lack of common facts between the negligence claim against the NYCTA and the federal claims; and

(3) Plaintiff's negligence allegations do not state a claim against the NYCTA, and should be dismissed under Rule 12(b)(6). *See generally* NYCTA Mem., ECF 42. The Court addresses the jurisdictional question first, then turns to the NYCTA's notice of claim argument.

    1. *Lack of Supplemental Jurisdiction*

Because the state law negligence claim against the NYCTA is so factually unrelated from the other federal claims alleged in this action, the Court recommends dismissal for lack of supplemental jurisdiction. Importantly, and in contrast to the state law claims against JHMC discussed above, which were grounded in substantially the same facts as the Section 1983 claims (construed liberally as against JHMC and its employees), the NYCTA argues that the negligence claim does not "derive from a common nucleus of operative fact" as the claims related to Plaintiff's alleged false arrest and unlawful seizure. NYCTA Mem., ECF 42, at 9 (quotation marks omitted); *see id.* (discussing how the "negligence claim requires facts about the NYCTA's knowledge of, and ab[ility] to prevent, the allegedly 'unsafe conditions' on the subway platform that purported[ly] caused Plaintiff's injuries," while the false arrest claims and *Monell*-type claims concern the actions of the NYPD officers, JHMC, and JHMC employees).

The recent opinion of the Honorable Rachel P. Kovner in *Sadigh v. City of New York* is instructive. There, the court found that the exercise of supplemental jurisdiction was inappropriate where the *pro se* plaintiff's state law negligence claims against JHMC and John Doe staff — arising from the plaintiff's allegations of mistreatment while at the hospital — lacked a common nucleus of operative fact with her Section 1983 excessive force claims, which arose prior to her transport to the hospital. *See* 2025 WL 1092842, at *1, *4. In *Sadigh*, even though the NYPD officer defendants' alleged excessive force in arresting the plaintiff and transporting her to the hospital precipitated the

23

involuntary hospitalization during which her negligence claims arose, Judge Kovner found that the two incidents shared "no overlap, much less substantial overlap, in the factual allegations." *Id.* at *4 (quotation marks and alterations omitted).

So too here. The facts underlying Plaintiff's negligence claim — his alleged slip-and-fall onto the train tracks — appear to have led to his involuntarily hospitalization, which gave rise to his claims against JHMC and the NYPD, but the events concerning his fall, which form the basis of his claim against the NYCTA, are otherwise factually unrelated.[9] The negligence claim against the NYCTA would require inquiry into what duty of care the NYCTA owes its customers; whether the conditions on the platform complied with that duty, or were the cause of Plaintiff's injuries; and other questions that center entirely on conditions at the Jamaica-Van Wyck E train station. By contrast, the federal claims against JHMC involve questions about the policies, practices, and decisionmaking surrounding Plaintiff's involuntary hospitalization. Likewise, the federal claims against the NYPD involve questions about whether Plaintiff was confined, who confined him, whether he was conscious of or consented to such confinement, and whether that confinement was otherwise privileged.[10]

That the chain of events preceding the state and federal law claims against the NYPD officers and the JHMC Defendants derive from a single incident — here,

---

[9] Taking the allegations in Plaintiff's complaint as true, he claims only that he lost consciousness and woke up on a gurney in the Emergency Department of JHMC; he does not allege who, if anyone, called emergency services to facilitate his transport to the hospital while unconscious, and, as discussed, denies telling police officers that he jumped onto the tracks. Am. Compl., ECF 21-1, at ECF pp. 6–7; *see supra* note 6. In addition, Exhibit E to the amended complaint suggests that FDNY, not NYPD officers, transported Plaintiff to the hospital. Ex. E, ECF 21-1, at ECF p. 40 (FDNY Prehospital Care Report Summary).

[10] As discussed, Plaintiff does not allege specific facts detailing any particular NYPD officer's actions in this case. *See supra* note 9; *see also supra* note 8.

Plaintiff's slip-and-fall — does not support exercising supplemental jurisdiction. *See, e.g.*, *Lyndonville Sav. Bank & Tr. Co.*, 221 F.3d at 704–05; *Sadigh*, 2025 WL 1092842, at *4; *Hahn v. Rocky Mountain Exp. Corp.*, No. 11-CV-8512 (LTS) (GWG), 2012 WL 2930220, at *1 (S.D.N.Y. July 16, 2012) ("The only overlap between Plaintiff's [federal] wage claims and his [state] age discrimination claim is the fact that both arose in connection with his employment at RMX."). Because the Court cannot exercise supplemental jurisdiction over claims lacking a "common nucleus of operative fact," the Court respectfully recommends dismissing Plaintiff's negligence claim against Defendant NYCTA for lack of subject matter jurisdiction.[11]

2. *Failure to Serve Notice of Claim*

Even if there were grounds for exercising supplemental jurisdiction over this claim, the Court would decline to do so on procedural grounds. "In federal court, state notice-of-claim statutes apply to state-law claims." *Parise v. N.Y.C. Dep't of Sanitation*, 306 F. App'x 695, 697 (2d Cir. 2009). Under the New York General Municipal Law and Public Authority Law, an individual injured by a public benefit corporation like the NYCTA must serve a notice of claim within 90 days of an incident as "a condition precedent to bringing a personal injury action." *Id.* (citing N.Y. Gen. Mun. L. § 50-e); *see*

---

[11] The Court also notes that, beyond the judicial economy concerns discussed above, comity cuts firmly against retaining jurisdiction here. The New York state courts are best positioned to adjudicate questions of New York state law, as to both the procedural sufficiency of Plaintiff's notice of claim and whether Plaintiff has stated a claim for negligence. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008). Also, as discussed above, the tolling provision in 28 U.S.C. § 1367(d) operates to preserve Plaintiff's right to refile his negligence claim within 30 days of dismissal, preventing the dismissal from prejudicing his rights.

N.Y. Pub. Auth. L. § 1212(2), (4).[12] The plaintiff bears the burden of demonstrating his compliance with this requirement, and failure to comply requires dismissal for failure to state a claim. *See Islam v. Melisa*, No. 18-CV-2535 (KAM) (LB), 2020 WL 1452463, at *7 (E.D.N.Y. Mar. 24, 2020) (collecting cases).

Here, Plaintiff's amended complaint does not allege that he served the NYCTA with a notice of claim, properly or at all.[13] The Court therefore recommends that his negligence claim against the NYCTA be dismissed under Rule 12(b)(6) for failure to state a claim. *See, e.g.*, *id.* (dismissing negligence claims against the NYCTA for failure to

---

[12] The notice of claim statutes include specific procedural requirements. The notice must be served via personal delivery or physical mail on the person designated for service of summons or "an attorney regularly engaged in representing such public corporation." N.Y. Gen. Mun. L. § 50-e(3)(a). In a city of over one million people, the notice may also be served "by electronic means in a form and manner prescribed" by the city; New York City requires the claims to be submitted by email or mail to "Department of Law – Claims, 130 Livingston Street, 10th Floor, Brooklyn, NY 11201." *Id.*; NYCTA Mem., ECF 42, at 7. If the notice is served within 90 days, but in a manner out of compliance with the statute's requirements, the service is still valid if "the notice is actually received by a proper person within the time specified by this section," and the public corporation does not return the notice, along with an explanation of the defect, within 30 days." N.Y. Gen. Mun. L. § 50-e(3)(c).

[13] The NYCTA further argues that, even if the Court were to consider materials outside the amended complaint, Plaintiff's allegations in his opposition to the NYCTA's first motion to dismiss — asserting that Plaintiff completed a Personal Injury Claim Form from the New York City Comptroller's Office and provided it to a "NYCDOC official" in an envelope addressed to NYCTA/MTA at "2 Broadway" — likewise fail to allege legally sufficient service of a notice of claim. NYCTA Mem., ECF 42, at 6–7; *see* Pl. Opp'n, ECF 20, at ECF p. 2; Ex. A, ECF 20, at ECF pp. 7–12; Ex. B, ECF 20, at ECF p. 13–14; *see* N.Y. Gen. Mun. L. § 50-e.

As discussed above, a court deciding a motion to dismiss must ordinarily limit itself to considering pleadings within the four corners of the operative complaint and documents incorporated therein by reference. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021); *see also Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999). In light of the special solicitude granted to *pro se* plaintiffs, district courts may also consider factual allegations made in papers opposing a motion to the extent that they are consistent with the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *see also Garcia v. Alk*, No. 09-CV-2045 (DLI) (LB), 2015 WL 1469294, at *3 n.2 (E.D.N.Y. Mar. 30, 2015) (collecting cases). Here, Plaintiff has not included any factual allegations regarding service of a notice of claim in the amended complaint, which is now the operative complaint, nor in the opposition papers to the instant motions to dismiss.

allege service of notice of claim); *Chabot v. County of Rockland*, No. 18-CV-4109 (KMK), 2019 WL 3338319, at *9 (S.D.N.Y. July 25, 2019) (same, against local Board of Elections defendants).

Accordingly, the Court recommends dismissal of Plaintiff's state law negligence claims against NYCTA on procedural grounds, in addition to the recommendation that it be dismissed for lack of supplemental jurisdiction.

## CONCLUSION

For the reasons discussed herein, the Court recommends that Defendants' motions to dismiss be granted, and that Plaintiff's claims be dismissed, with prejudice, as follows. Plaintiff's federal claims against JHMC and John Doe JHMC employees should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Am. Compl., ECF 21-1, at ECF pp. 15–18 (Section 1983 claim), 21–23 (*Monell*-type claim). Plaintiff's state claims against JHMC and John Doe JHMC employees and the NYCTA should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); Am. Compl., ECF 21-1, at ECF pp. 15–18 (state law false arrest claim), 19–20 (negligence claim).

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the

District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

      **SO ORDERED.**

Dated: Brooklyn, New York
      December 19, 2025

                                    *Taryn A. Merkl*

                                  TARYN A. MERKL
                                  UNITED STATES MAGISTRATE JUDGE